## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **KEVIN DOOLEY KENT, in his capacity as Receiver for Broad Reach Capital, LP, Broad Reach Partners, LLC, Bristol Advisors, LLC, TA1, LLC, Investment Consulting LLC, and CV Investments LLC** | : | |
| **1500 Market Street, Centre Square West Tower, Suite 3900 Philadelphia, PA 19102-2100** | : | **Civil Action** |
| | : | **NO. _____** |
| **Plaintiff,** | : | |
| **v.** | : | |
| **RONALD HIGHTOWER 4545 Lake Forrest Drive Atlanta, GA 30342** | : | |
| **AND** | : | |
| **JANET HIGHTOWER 4545 Lake Forrest Drive Atlanta, GA 30342** | : | |
| **AND** | : | |
| **BLACKBURN INTERNATIONAL LIMITED Hunkins Waterfront Plaza Suite 556, Main Street Charlestown, Nevis** | : | |
| **AND** | : | |
| **VESTIMENTA INVESTMENTS, LLC 712 Lynnwood Blvd Nashville, TN 37205** | : | |
| **Defendants.** | : | |

## <u>COMPLAINT</u>

## INTRODUCTION

1.      This action is brought pursuant to a June 29, 2020 Order (the "Receivership Order") issued by the Honorable Madeline Cox Arleo, United States District Judge for the District of New Jersey, in the underlying action brought by the Securities and Exchange Commission ("SEC" or the "Commission") against Brenda Smith ("Smith"); Broad Reach Capital, LP ("Broad Reach Capital", "Broad Reach Fund" or the "Fund"); Broad Reach Partners, LLC ("Partners"); and Bristol Advisors, LLC ("Bristol") (collectively, the "Smith Defendants"), captioned *Securities and Exchange Commission v. Brenda Smith*, *et al.*, Civil Action No. 2:19-cv-17213 (MCA) (D.N.J.) (the "SEC Action"). True and correct copies of the SEC Complaint and the Receivership Order are attached hereto as Exhibit "A" and Exhibit "B," respectively.

2.      The SEC Action arises out of an investment advisory fraud in which, *inter alia*, the Smith Defendants solicited approximately $100 million from investors for purported investment in sophisticated securities trading strategies. In reality, Smith took the vast majority of these funds for unrelated companies, to pay back other investors, and for personal use. And, in 2019, confronted with at least one investor trying to redeem its investment, Smith created a fictitious valuation of assets backed by false claims that she held billions of dollars in assets through a company she owned.

3.     The fraud was perpetrated by the Smith Defendants directly and through numerous affiliated entities owned or controlled by one or more of the Smith Defendants (referred to in the Receivership Order as "Affiliated Entities").

4.     The Smith Defendants and Affiliated Entities operated out of offices in West Conshohocken, Pennsylvania, and, upon information and belief, all or a majority of their conduct as set forth in this Complaint occurred in the Commonwealth of Pennsylvania.

5.     Brenda Smith is also being criminally prosecuted for her conduct. The government filed its criminal complaint against Brenda Smith on August 22, 2019 in the matter of *USA v. Smith*, No. 2:20-cr-00475-MCA-1 (D.N.J.) (the "Criminal Action"). On September 9, 2021, Smith pled guilty to Count Seven of the Criminal Indictment, which charged her with securities fraud. Smith is scheduled to be sentenced on March 28, 2022.

6.     The SEC Action is ongoing, but currently subject to a stay pending the completion of the Criminal Action. Under the terms of the stay order, all orders relating to the Receivership and all powers granted to the Receiver remain in full force and effect during the pendency of the stay.

7.     Plaintiff, Kevin Dooley Kent, was appointed under the Receivership Order to serve as the Receiver ("Receiver" or "Plaintiff") for the purpose of marshaling and preserving all assets, including, *inter alia*, monies, securities,

choses in action, and properties of the Smith Defendants and the Affiliated Entities to maximize the recovery available to investors defrauded by Smith. This includes assets that (1) are attributable to assets derived from investors or clients of the Smith Defendants; (2) are held in constructive trust for the Smith Defendants; (3) were fraudulently transferred by the Smith Defendants; and/or (4) may otherwise be included as assets of the Smith Defendants or Affiliated Entities (collectively "the Receivership Estate" or "Receivership Assets"). *See* Ex. "B", Whereas ¶ 3.

8.     In this regard, the Receivership Order provides that "Kevin D. Kent, Esq., of the firm Conrad O'Brien, is hereby appointed to serve without bond as receiver . . . to assume control of, marshal, pursue, and preserve the Receivership Assets." *See* Ex. "B", ¶ 5.

9.     In the Receivership Order, the Court took exclusive jurisdiction and possession of the Receivership Assets, including, but not limited to, the assets of the following Smith Defendants and Affiliated Entities: Broad Reach Capital, LP; Broad Reach Partners, LLC; Bristol Advisors, LLC; BA Smith & Associates LLC; Bristol Advisors LP; CV Brokerage, Inc.; Clearview Distribution Services LLC; CV International Investments Limited; CV International Investments PLC; CV Investments LLC ("CV Investments"); CV Lending LLC; CV Minerals LLC; BD of Louisiana, LLC; TA 1, LLC ("TA1"); FFCC Ventures, LLC; Prico Market LLC; GovAdv Funding LLC; Elm Street Investments, LLC; Investment

4

Consulting LLC ("Investment Consulting") and Tempo Resources LLC (collectively, "Receivership Parties" or "Receivership Entities"). *See* Ex. "B", ¶ 1.

10.     Plaintiff, Kevin Dooley Kent, in his capacity as Receiver for, *inter alia*, the Receivership Assets and Receivership Parties, by and through his counsel, hereby asserts this action to recover, and avoid the fraudulent transfer(s) of, Receivership Assets made by certain of the Receivership Parties to and/or on behalf of the Defendants, under theories of fraudulent transfer, unjust enrichment, and breach of contract. The Receiver also demands an accounting from Defendants, including but not limited to all funds transferred by the Receivership Parties to them, for their benefit, on their behalf, or at their request, in whatever form.

## **PARTIES**

11.     Under the Receivership Order, Receiver is a representative of this Court with the full powers of an equity receiver. *See* Ex. "B".

12.     The Receivership Order authorizes the Receiver to institute legal proceedings on behalf of and for the benefit of the Receivership Estate as may be necessary or appropriate in order to recover, conserve or maximize Receivership Assets, including, *inter alia,* actions seeking legal and equitable relief, to avoid fraudulent transfers, to collect debts, for disgorgement of profits, for creation of a constructive trust, for asset turnover, for rescission and restitution, and such other

relief as this Court may deem necessary to enforce the Receivership Order. *See* Ex. "B", ¶¶ 50-51.

13.     Defendant, Ronald Hightower ("Hightower") is an individual whose residential address is 4545 Lake Forrest Drive, Atlanta, GA 30342.

14.     Defendant, Janet Hightower is an individual whose residential address is 4545 Lake Forrest Drive, Atlanta, GA 30342.

15.     At all times materials hereto, Defendants, Ronald Hightower and Janet Hightower, were husband and wife.

16.     Defendant, Blackburn International Limited ("Blackburn") is a legal entity formed in St. Kitts & Nevis, located at Hunkins Waterfront Plaza, Suite 556, Main Street, Charlestown, Nevis.

17.     Upon information and belief, Blackburn may have been administratively dissolved.

18.     Upon information and belief, at all times material hereto, Hightower and Janet Hightower are and/or were the controlling owners, founders, directors, and sole members and/or managers of Blackburn, and Blackburn is essentially their alter-ego, and they personally engaged in the conduct of Blackburn as alleged in this Complaint. Upon further information and belief, Ronald Hightower is the managing member, president, authorized chief executive officer, and authorized signatory of Blackburn, with full authority to act for and on behalf of Blackburn.

19.    Upon information and belief, Hightower and/or Janet Hightower are co-owners and/or signatories of bank accounts in the name of Blackburn, and were the true recipients of all funds transferred to Blackburn as set forth in detail herein.

20.    Defendant, Vestimenta Investments, LLC ("Vestimenta"), is a legal entity incorporated in the State of Tennessee with a principal office and mailing address of 712 Lynnwood Blvd, Nashville, TN 37205, whose registered agent is Roger Thompson, 712 Lynnwood Blvd., Nashville, TN 37205.

21.    Upon information and belief, Vestimenta is a member-managed entity whose sole members are Hightower and Janet Hightower.

22.    Upon information and belief, Hightower and Janet Hightower are the controlling owners, founders, directors, and sole members and managers of Vestimenta, and Vestimenta is essentially their alter ego, and they personally engaged in the conduct of Vestimenta as alleged in this Complaint.

## **JURISDICTION AND VENUE**

23.    Federal courts have jurisdiction over all suits in equity and actions at law brought to enforce any liability or duty created by the federal securities laws pursuant to 15 U.S.C. §§ 77v(a) and 78aa, which laws are at issue in the SEC Action.

24.    This Court has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367, as Receiver brings this action to accomplish the objectives of the

Receivership Order entered in the SEC Action, and as such this action forms part of the same case or controversy as the SEC Action.

25.     Under the Receivership Order, this Court retains exclusive jurisdiction over and possession of the Receivership Assets.

26.     This Court also has jurisdiction over this action under 28 U.S.C. §§ 754 and 1692. Receiver has filed copies of the Receivership Order with the United States District Court in each federal judicial district, including the Northern District of Georgia and Middle District of Tennessee. As a result of those filings, the Receiver is vested with complete control over any real or personal property of the Receivership Estate located in any federal judicial district, including the Northern District of Georgia and Middle District of Tennessee, with the right to take possession of such property.

27.     Venue is proper in this Court under 28 U.S.C. §§ 754, 1391(b), and 1692.

## FACTUAL BACKGROUND

### The Fraudulent Scheme

28.     The SEC Action arises out of an investment advisory fraud that the Smith Defendants operated from at least February 2016 through 2019, in connection with which the Smith Defendants offered investors limited partnership interests in the Fund.

29.     Since the Fund's inception, Smith raised approximately $100 million from investors, and investors are still owed approximately $60 million in principal.

30.     To solicit and retain investors, the Smith Defendants represented that the funds would be invested in highly liquid securities through various sophisticated and profitable trading strategies with consistently high returns, including those that they were uniquely positioned to pursue because of their access to the trading floor of the Philadelphia Stock Exchange (hereinafter, the "Trading Strategies").

31.     In reality, only a small fraction of investor money was actually used for these Trading Strategies. The vast majority of these investments were moved through bank accounts Smith controlled, funneled into unrelated companies, used to pay back other investors, or utilized for Smith's personal use.

32.     Smith's fraudulent misappropriation and use of investors' funds caused the Receivership Parties to suffer harm, which the Receiver seeks to redress under Court authority.

33.     Smith was able to conceal her fraudulent misappropriation and mishandling of investor funds through numerous misrepresentations to existing and prospective investors and others, including, *inter alia*, by generating and providing false performance statements and fabricated documents regarding the Fund's assets and valuations.

## <u>Transfer of Receivership Assets to/for the Benefit of Defendants</u>

34.     Over the following series of transactions, Brenda Smith caused a total

of $4,941,466.24 in Receivership Assets to be transferred to and/or for the benefit

of Defendants from Receivership Parties TA1 and Investment Consulting:

     a.  On or about February 6, 2017, Smith caused $50,000.00 to be transferred to Blackburn from Investment Consulting;

     b.  On or about March 1, 2017, Smith caused $544,800.00 to be transferred to Blackburn from TA1;

     c.  On or about June 28, 2017, Smith caused $16,666.24 to be transferred to Blackburn from Investment Consulting;

     d.  On or about August 30, 2017, Smith caused $500,000.00 to be transferred to Blackburn from Investment Consulting;

     e.  On or about March 6, 2018, Smith caused $100,000.00 to be transferred to Blackburn from Investment Consulting;

     f.  On or about March 14, 2018, Smith caused $450,000.00 to be transferred to Blackburn from Investment Consulting;

     g.  On or about March 14, 2018, Smith caused another $500,000.00 to be transferred to Blackburn from Investment Consulting;

     h.  On or about April 11, 2018, Smith caused $550,000.00 to be transferred to Blackburn from Investment Consulting;

     i.  On or about April 12, 2018, Smith caused $620,000.00 to be transferred to Blackburn from Investment Consulting;

     j.  On or about April 19, 2018, Smith caused $1,170,000.00 to be transferred to Blackburn from Investment Consulting;

     k.  On or about May 16, 2018, Smith caused $440,000.00 to be transferred to Blackburn from Investment Consulting.

35.     Upon information and belief, all or most of the above-referenced payments were made to an account at Wells Fargo in the name of "Janet Hightower dba Blackburn International Limited" (hereinafter "Blackburn Account").

36.     Upon information and belief, additional Receivership Assets may have been transferred to Defendants. Identification of any such transactions are subject to the Receiver's demand for an accounting, and the Receiver reserves the right to seek a return of all such additional transactions identified.

37.     Financial books and records belonging to the Receivership Parties and/or Smith provide no indication that any of the funds paid to Defendants were ever repaid to Smith or the Receivership Parties.

38.     Upon information and belief, the Receivership Parties did not receive anything of value, or reasonably equivalent value, in exchange for these transfers.

39.     The transferred funds were derived directly or indirectly from investments made by investors in the Fund.

40.     The aforementioned transfers from Receivership Parties TA1 and Investment Consulting represent an unauthorized use of investor funds, and these payments bear no relationship to the Trading Strategies investors of Broad Reach Capital and TA1 had authorized Smith to pursue with their money.

## Private Placement Agreement Between Blackburn and CV Investments

41.     On or about August 29, 2017, Clearview Investments, LLC (denoted as "CVI") and Blackburn (denoted as "BBIL") entered into a Private Placement Agreement ("PPA").

42.     Upon information and belief, Clearview Investments, LLC/CVI is a pseudonym for Receivership Party CV Investments, and CV Investments was thus a party to the PPA.

43.     The PPA was signed by Smith on behalf of CVI, and Ronald Hightower on behalf of BBIL, on or about August 30, 2017.

44.     The PPA provided, *inter alia*, that CVI was in need of a Standby Letter of Credit ("SBLC") for a pending business transaction, and that BBIL had sourced an SBLC in the required amount.

45.     The PPA provides that CVI was to provide a one-time payment to BBIL in the amount of Five Hundred Thousand Dollars ($500,000.00) in payment of the costs to send the SBLC through the Swift system.

46.     The PPA further states: "[i]n any event the SBLC is not delivered to the coordinates provided by the MT799/MT760 CVI will be entitled to receive a refund of its swift fee."

47.     The $500,000.00 payment referenced in the PPA was in fact made by Investment Consulting on August 30, 2017, as set forth above.

48.     Upon information and belief, the SBLC was never delivered, and was never monetized or placed into a trade program.

49.     Upon information and belief, no proceeds were provided to any Receivership Party pursuant to the terms set forth in the PPA.

50.     Accordingly, under the terms of the PPA, the $500,000.00 must be refunded. The Receiver made a demand for, *inter alia*, a refund of this payment on October 14, 2021, but has not received the funds nor a substantive response to this demand.

### Purchase of Georgia Property

51.     On or about April 25, 2018, the directors of Blackburn—namely, Hightower, as managing member, and Janet Hightower, as "Board Member," held a "meeting of directors" during which a resolution was adopted granting Hightower full corporate authority to pursue and complete a private real estate purchase with Vestimenta. No other business was conducted at the purported meeting.

52.     On or about April 25, 2018, Articles of Organization of Limited Liability Company were filed with the State of Tennessee Division of Business Services, Department of State for Vestimenta. The Articles of Organization state that Vestimenta is member-managed, and had one member as of the date of filing.

However, upon information and belief, it had two members—Hightower and Janet Hightower.

53.     Upon information and belief, Vestimenta was formed on April 25, 2018 for the sole purpose of purchasing real estate in Atlanta, Georgia, through the transactions described in further detail below.

54.     An Operating Agreement for Vestimenta was adopted on or about April 26, 2018. According to the Operating Agreement, Hightower and Janet Hightower were its sole members, each with a fifty percent (50%) interest.

55.     Also on or about April 26, 2018, Hightower and Janet Hightower, as co-managing members of Vestimenta, held a "meeting of directors", and adopted a corporate resolution by which Hightower and Janet Hightower were granted full corporate authority to pursue and complete a private real estate purchase on behalf of Vestimenta, with funds borrowed from Blackburn. No other business was conducted at the purported meeting.

56.     On or about May 3, 2018, Vestimenta purchased a home located at 4545 Lake Forrest Drive, Atlanta, GA 30342 ("the Property"), for approximately $2,479,773.20 in cash—consisting of $50,000.00 in deposit or earnest money previously paid, $1,954.77 in adjustments for taxes unpaid by the seller, and $2,427,818.43 due at closing.

57.     Upon information and belief, the deposit and closing funds were paid with funds withdrawn from the Blackburn Account on April 24, 2018 and May 2, 2018, respectively.

58.     In connection with the purchase of the Property, Janet Hightower signed a Statement Regarding Source of Funds in which she stated: "On May 2, 2018, I wired certain monies in the amount of $2,427,818.43 to the escrow account of O'Kelley and Sorohan, Attorneys at Law, LLC, in order to fund a real estate settlement transaction concerning the property . . . The funds wired are to be used towards the purchase of the property. The purchaser of the property is Vestimenta Investments, LLC. The Funds shall not serve as a loan to Vestimenta Investments, LLC and no security interest in favor [sic] Vestimenta Investments, LLC is created as a result of the Funds."

59.     Notwithstanding the statements made in the Statement Regarding Source of Funds, Hightower and Janet Hightower signed a purported promissory note on behalf of Vestimenta on May 3, 2018, providing that Vestimenta will pay the sum of $2,467,000.00 to Blackburn on or before May 3, 2023, to be made in dollars, "without deduction for and free of any interest, taxes, levies or duties present or future of any nature."

60.     At the same time, Hightower has claimed through his Counsel that Blackburn has been dissolved and no longer maintains a corporate existence, and it is unclear whether Blackburn actually intends to enforce or act upon the note.

61.     Upon information and belief, Hightower and Janet Hightower reside at the Property.

62.     Upon information and belief, the Receivership Assets transferred from Investment Consulting to Blackburn funded the purchase of the Property. Significantly, in the month immediately preceding the purchase of the Property alone, Investment Consulting transferred $2,340,000.00 in Receivership Assets to Blackburn.

## Discovery of Claims

63.     Before his appointment, the Receiver could not have reasonably discovered any claims against Defendants.

64.     Shortly after his appointment, on August 20, 2020, the Receiver sent notice of the Receivership Order to Blackburn, with attention to Ronald Hightower, requesting "a certified statement identifying the balances of any accounts and/or the location of any assets in which the Receivership Parties may have an interest, of which you are in possession, custody or control or are otherwise aware." The Receiver did not receive a response to this correspondence.

65.     The Receiver sent a similar letter to Ronald Hightower and Vestimenta with the same requests on January 15, 2021 after learning the address of the Atlanta home and the identity of its owner.

66.     Ronald Hightower responded by signed letter dated January 29, 2021, stating: "Please be advised that on behalf of Blackburn International Limited, Vestimenta Investments, LLC, myself, and any other entity I own or control none of the aforementioned are in possession of any Receivership assets of Ms. Smith or any of her business entities or affiliates."

67.     Following receipt of this letter, the Receiver's Counsel issued a subpoena to Ronald Hightower, individually and on behalf of Vestimenta and Blackburn, which was served on February 19, 2021 which sought, *inter alia*, a full accounting of the payments referenced above, including the basis for such payments and the current location of the funds.

68.     After requesting and being granted an extension to respond to the subpoena, Hightower responded to the subpoena on April 7, 2021.

69.     By letter dated April 7, 2021, in response to the subpoena and in addition to producing over 500 pages of documents, Hightower's counsel stated: "[w]ith respect to the funds referenced in the Subpoena as paid by TA 1 LLC and Investment Consulting, LLC to Blackburn, all such funds represented fees earned

in exchange for various consulting and other services provided by Mr. Hightower

to Brenda Smith . . .”

70.     The Receiver could not have reasonably discovered any claims

against Defendants prior to, at earliest, receiving Hightower's subpoena response.

71.     Any temporal limitations, statutory or otherwise, on Receiver's ability

to bring the causes of action set forth in this Complaint are subject to equitable

tolling as a result of, among other things, the discovery rule and the doctrine of

fraudulent concealment.

## COUNT I (against All Defendants)
## DEMAND FOR AN ACCOUNTING

72.     Receiver hereby incorporates Paragraphs one (1) through seventy-one

(71) of this Complaint as if set forth at length herein.

73.     The Receiver is the successor in interest to the Receivership Parties

and has assumed their rights and obligations, including without limitation the right

to collect amounts owing on purported loans made by the Receivership Parties.

74.     The Receiver has determined that Smith caused the transfer of nearly

$5 million in Receivership Assets to, for the benefit of, at the request of, and/or on

behalf of, Defendants, Ronald Hightower, Janet Hightower, Blackburn

International Limited and Vestimenta Investments, LLC, pursuant to the

transactional history set forth above.

75.     The Receiver currently lacks the information to determine whether these were the only transfers made by Receivership Parties to, for the benefit of, at the request of, and/or on behalf of, Defendants, Ronald Hightower, Janet Hightower, Blackburn International Limited and Vestimenta Investments, LLC during Smith's operation of the fraudulent scheme.

76.     Additionally, the information necessary to determine the true nature of these transactions, and to identify the existence of any additional transactions, is wholly or largely within the knowledge and control of Defendants, Ronald Hightower, Janet Hightower, Blackburn International Limited and Vestimenta Investments, LLC.

77.     The transactions in question occurred during the perpetration of a fraud, namely the fraudulent scheme operated by Smith through the Receivership Parties.

78.     The Receivership Order grants the Receiver the authority to demand an accounting from parties who engaged in transactions with the Receivership Parties and/or who may possess Receivership Assets.

## **Prayer for Relief as to Count I**

WHEREFORE, Receiver requests this Court enter a judgment in his favor and against Defendants, Ronald Hightower, Janet Hightower, Blackburn International Limited and Vestimenta Investments, LLC, requiring them to provide

a full and accurate accounting of any and all assets received from, payments made on their behalf by, or transactions engaged in with, the Smith Defendants and Receivership Parties, and additionally requests interest, costs, and such other and further relief as this Court may deem just and proper.

**COUNT II (against All Defendants)**
**ACTION TO AVOID FRAUDULENT AND VOIDABLE TRANSFERS**

79.     Receiver hereby incorporates Paragraphs one (1) through seventy-eight (78) of this Complaint as if set forth at length herein.

80.     As set forth in detail above, Receivership Parties TA1 and Investment Consulting made transfers to, for the benefit of, at the request of, and/or on behalf of Defendants, Ronald Hightower, Janet Hightower, Blackburn International Limited and Vestimenta Investments, LLC, in 2017 and 2018.

81.     All transfers of TA1 and Investment Consulting to, for the benefit of, at the request of and/or on behalf of Defendants, Ronald Hightower, Janet Hightower, Blackburn International Limited and Vestimenta Investments, LLC—and any subsequent transfers of these assets to and between Defendants, to the extent applicable—were fraudulent and voidable within the meaning of the Pennsylvania Uniform Voidable Transactions Act (previously known as the Pennsylvania Uniform Fraudulent Transfer Act), 12 Pa.C.S.A. § 5101, *et seq.* and the Georgia Uniform Fraudulent Transfers Act, Ga. Code § 18-2-70 *et seq.*

82.     Smith caused the transfer of assets to, for the benefit of, at the request of and/or on behalf of Defendants during the course of her operation of a fraudulent scheme.

83.     Because Smith operated TA1 and Investment Consulting as part of a fraudulent investment scheme, all transfers of their assets to, for the benefit of, at the request of and/or on behalf of Defendants were made with actual intent to hinder, delay and/or defraud the Receivership Parties' creditors and/or debtors, and are fraudulent and voidable.

84.     When the transfers were made to, for the benefit of, at the request of and/or on behalf of Defendants, Smith was operating the Receivership Parties as part of a fraudulent investment scheme intending to incur, or believing or reasonably believing that the Receivership Parties would incur, debts beyond their ability to pay them as they became due.

85.     The Receivership Parties were insolvent or became insolvent shortly after and/or as a result of the transfers made and were unable to pay their debts as they became due.

86.     Defendants participated in the fraudulent transactions at issue as they received the benefit of the transfers, which money was used, in part, to pay for various expenses and ownership and personal interests of Defendants.

87.    Defendants did not take the fraudulent transactions in good faith, and did not provide any reasonably equivalent value to the Receivership Parties in exchange for these transfers.

88.    The Receiver is entitled to avoid the fraudulent transfers to inure to the benefit of the Receivership Estate and in order to maximize the recovery available to the defrauded investors.

### Prayer for Relief as to Count II

WHEREFORE, Receiver requests this Court enter a judgment in his favor and against Defendants, Ronald Hightower, Janet Hightower, Blackburn Investments Limited and Vestimenta Investments, LLC, avoiding, setting aside, and requiring repayment of the net amount of the transfers made to them, at their request, for their benefit and/or on their behalf by TA1, LLC and Investment Consulting LLC, as well as an attachment or other appropriate remedy against the assets transferred or other property of Defendants. To the extent any of these funds have been used to acquire real or personal property in which Defendants claim an interest, Receiver also seeks a constructive trust and/or equitable lien over those assets, or alternatively, recovery of the asset(s) purchased with the Receivership Assets. The Receiver also requests interest, costs, and such other and further relief as this Court may deem just and proper.

## COUNT III (against All Defendants)
## UNJUST ENRICHMENT

89.     Receiver hereby incorporates Paragraphs one (1) through eighty-eight (88) of this Complaint as if set forth at length herein.

90.     The Receivership Parties conferred a benefit on Defendants, Ronald Hightower, Janet Hightower, Blackburn International Limited and Vestimenta Investments, LLC, by making the transfers set forth in detail herein.

91.     Defendants knowingly and voluntarily accepted and retained the benefits conferred upon them by the Receivership Parties.

92.     The circumstances are such that it would be inequitable and unjust for Defendants to retain the benefits conferred by the Receivership Parties without paying the Receiver the value thereof.

## Prayer for Relief as to Count III

WHEREFORE, Receiver requests this Court enter a judgment in his favor and against Defendants, Ronald Hightower, Janet Hightower, Blackburn Investments Limited and Vestimenta Investments, LLC, in the amounts they were unjustly enriched, including through disgorgement of sums equal to these amounts. To the extent any of these funds have been used to acquire real or personal property in which Defendants claim an interest, Receiver also seeks a constructive trust and/or equitable lien over those assets or alternatively, recovery of the asset(s)

purchased with the Receivership Assets. The Receiver also requests interest, costs, and such other and further relief as this Court may deem just and proper.

## COUNT IV (against Ronald Hightower, Janet Hightower and Blackburn International Limited)
## BREACH OF CONTRACT

93.     Receiver hereby incorporates Paragraphs one (1) through ninety-two (92) of this Complaint as if set forth at length herein.

94.     Blackburn International—and Hightower and Janet Hightower—who, upon information and belief, had access to and control over all funds transferred to Blackburn—have failed to provide a refund of the $500,000.00 transferred by Investment Consulting to Blackburn on August 30, 2017, as required by the terms of the PPA, and have thus breached the PPA.

95.     The breach of the PPA has caused direct financial harm to the Receivership Parties, as set forth in detail above.

## Prayer for Relief as to Count IV

WHEREFORE, Receiver demands judgment against Bluwater International Limited, Ronald Hightower and Janet Hightower in the amount of $500,000.00, together with interest, post-judgment interest, fees and costs as may be allowed,

and such other and further relief as the Court may deem just and proper.

Respectfully Submitted,

*s/ Robin S. Weiss* _____
Robin S. Weiss (N.J. ID. 018182011)
Conrad O'Brien PC
1500 Market Street, Suite 3900
Centre Square, West Tower
Philadelphia, PA 19102
Phone: 215-864-9600
Fax: 215-864-9620
rweiss@conradobrien.com
*Attorney for Receiver, Kevin Dooley Kent*

Dated: 3/4/2022